# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PAR PHARMACEUTICAL, INC.,　　　　)
PAR STERILE PRODUCTS, LLC, and　)
ENDO PAR INNOVATION　　　　　　 )
COMPANY, LLC,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　C.A. No. 18-823-CFC
　　　　　　　Plaintiffs,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　**PUBLIC VERSION**
　　　　　v.　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
EAGLE PHARMACEUTICALS INC.,　　 )
　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　)

## DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS ITS FIRST, SECOND, SEVENTH, EIGHTH, ELEVENTH, TWELFTH AND SIXTEENTH COUNTERCLAIMS

OF COUNSEL:

Jay P. Lefkowitz, P.C.
Jeanna M. Wacker
Benjamin A. Lasky
Sam Kwon
Christopher J. Citro
Ashley Cade
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Tel:  (212) 446-4800

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

*Attorneys for Defendant Eagle Pharmaceuticals Inc.*

Dated:   December 6, 2019
Public Version Dated: December 13, 2019
6509300 / 45185

## **TABLE OF CONTENTS**

BACKGROUND AND SUMMARY OF THE ARGUMENT ................................. 1

LEGAL STANDARDS ................................................................................... 6

ARGUMENT ................................................................................................. 7

I.   Par Has Not Met Its "Formidable Burden" Of Showing No Case Or Controversy Remains On Its "Dropped Patents" .......................................... 7

    A.   Par's stipulation does not remove the threat of suit on the patents following routine amendments to Eagle's ANDA .................. 9

    B.   Par's stipulation does not remove the threat of suit against Eagle's suppliers, distributors, and customers .................................... 11

    C.   Par's cited cases are distinguishable and do not support dismissal ................................................................................................ 14

II.   Dismissing Eagle's Counterclaims Would Unfairly Prejudice Eagle .......... 16

III.   If Par Agrees To Eagle's Proposed Stipulation And Covenant not to sue, Eagle Would Agree To Dismissal Of Its Counterclaims Without Prejudice ..................................................................................................... 18

IV.   Par Should Be Compelled To Promptly Respond To Eagle's Remaining Counterclaims ............................................................................ 18

CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

**CASES**                                                                      **Page(s)**

*ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*,
  975 F. Supp. 2d 1083 (N.D. Cal. 2013) ............................................................ 13

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) ....................................................................................*passim*

*ArcelorMittal v. AK Steel Corp.*,
  856 F.3d 1365 (Fed. Cir. 2017) ..................................................................... 6, 8

*Arris Grp., Inc. v. British Telecomms. PLC*,
  639 F.3d 1368 (Fed. Cir. 2011) ......................................................................... 6

*AstraZeneca LP v. Breath Ltd.*,
  No. 08-1512 (RMB/AMD) 2013 WL 2404167 (D.N.J. May 31, 2013) ...... 10, 13

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
  495 F.3d 1340 (Fed. Cir. 2007) ....................................................................... 14

*BIS Advanced Software Sys., Ltd. v. Red Bend Software, Inc.*,
  No. Civ.A. 04-11690-RWZ, 2006 WL 753246 (D. Mass. Mar. 22, 2006) ...10-11

*eSpeed Inc. v. Brokertec USA, LLC*,
  417 F. Supp. 2d 580 (D. Del. 2006) ................................................................. 16

*Fox Grp., Inc. v. Cree, Inc.*,
  700 F.3d 1300 (Fed. Cir. 2012) ................................................................. 14, 15

*Jervis B. Webb Co. v. S. Sys., Inc.*,
  742 F.2d 1388 (Fed. Cir. 1984) ................................................................. 14, 15

*Pfizer, Inc. v. Ranbaxy Laboratories, Ltd.*,
  525 F. Supp. 2d 680 (D. Del. 2007) ................................................................. 15

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
  556 F.3d 1294 (Fed. Cir. 2009) ......................................................................... 6

*In re Rivastigmine Patent Litig.*,
  No. 05 MD 1661(HB)(JCF), 2007 WL 1154000 (S.D.N.Y. Apr. 19,
  2007)..................................................................................................... 9, 10, 13

*SanDisk Corp. v. Mobile Media Ideas LLC*,
   No. C 11–00597 CW, 2011 WL 1990662 (N.D. Cal. May 23, 2011)............... 13

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
   665 F.3d 1269 (Fed. Cir. 2012).................................................................... 14, 15

*WS Packaging Grp., Inc. v. Glob. Commerce Grp., LLC*,
   No. 06-C-674, 2007 WL 205559 (E.D. Wis. Jan. 24, 2007) ........................13-14

**RULES**

Fed. R. Civ. P. 12(a)(4) .......................................................................................... 19

## **BACKGROUND AND SUMMARY OF THE ARGUMENT**

After over a year and a half of subjecting Eagle to meritless claims that its generic vasopressin product would infringe the Orange Book-listed '239, '478, and '223 patents—and now facing Eagle's inequitable conduct counterclaims—Par hopes to escape the inevitable by divesting this Court of jurisdiction through a narrow stipulation of dismissal. But Par's bare stipulation is inadequate, as it leaves key controversies unaddressed, including:

- Whether Par may reassert the dropped patents if Eagle's ANDA is amended—however insignificantly—before approval (as is routinely required in FDA review); and

- Whether Par may assert the dropped patents against Eagle's affiliates, joint venture partners, suppliers, distributors, and customers based on their activities with respect to Eagle's ANDA, even in its current form.

These unaddressed issues are key litigation-related risks that Eagle cannot leave unresolved; at a minimum, they would leave a cloud hanging over Eagle's ability to launch its ANDA product. To address these uncertainties, Eagle asked Par to provide a covenant not to sue to make clear that Par may not reassert the dropped patents against Eagle based on even minor ANDA amendments or against interested third parties such as Eagle's suppliers, distributors, and customers. But Par refused. Without such a covenant, a case or controversy remains and Par's motion must fail.

Dismissal of Eagle's unenforceability counterclaim on the '239 patent based on Par's bare stipulation also would prejudice Eagle for another reason: absent adequate safeguards—which Par has refused to provide—it could adversely impact Eagle's unenforceability counterclaims on the *remaining* patents-in-suit, which are inextricably intertwined with the '239 patent counterclaim. As detailed in Eagle's Amended Counterclaims, Eagle learned during discovery that Par's named inventor and prosecuting attorney conspired to submit false declarations during prosecution of the '239 patent. (D.I. 136 ¶¶ 60–157.) Specifically, a named inventor and a Par regulatory employee falsely asserted that the '239 patent inventors invented the subject matter of a product label for the prior art Vasostrict® product that the Examiner relied on to reject the pending claims. (*Id.* ¶¶ 71–126.) Based on these false representations, the Examiner withdrew the rejection and disqualified the otherwise invalidating label as prior art against the '239 patent. (*Id.* ¶¶ 127–150.) Notably, in disqualifying the invalidating label as prior art against the '239 patent, the Examiner also disqualified it as prior art in prosecution of the remaining patents-in-suit, which are in the same family and also name the '239 patent inventors. (*Id.* ¶¶ 158–224.) Thus, Eagle contends in its unenforceability counterclaims for the remaining patents-in-suit that the inequitable conduct during prosecution of the '239 patent also tainted the prosecution of the remaining patents-in-suit, rendering each of them unenforceable. (*Id.* ¶ 158–262.)

Because the facts underlying Eagle's inequitable conduct counterclaims on the remaining patents-in-suit are fundamentally intertwined with its counterclaim on the '239 patent, Eagle cannot agree to dismissal of its unenforceability counterclaim on the '239 patent without adequate safeguards. The risk of prejudice is real: for months, Par used withdrawal of its claims on the '239 patent as an excuse to refuse discovery on the inequitable conduct committed during prosecution of the '239 patent. Over a year ago, in November 2018, Eagle served interrogatories concerning the circumstances of the false declarations submitted during the prosecution of the '239 patent. (Ex. 1, Eagle's First Set of Interrogatories to Par (11/2/2018).) Par delayed providing a substantive response for almost a year until, under threat of a motion to compel, it finally agreed to provide the requested discovery on August 23, 2019. (Ex. 2, Email from Rhoad to Kwon (8/8/2019).) But on the day it was to serve its substantive responses, Par suddenly announced it was dropping its claims on the '239 patent and refused to provide the requested discovery relating to the '239 patent or its prosecution. (*See* Ex. 3, Email from Gagliardi to Counsel (8/26/2019); Ex. 4, Email from Gagliardi to Citro (9/6/2019).) When Eagle pressed for the withheld discovery, on the basis that it was also relevant to the validity and enforceability of the remaining patents-in-suit, Par continued to rely on its withdrawal of its claims regarding the '239 patent, without addressing the issue. (Ex. 5, Email from Rhoad to Cade (10/2/2019).) Realizing that Par intended to use dismissal of the '239 patent

as an excuse to deny Eagle critical discovery into its unenforceability counterclaims, Eagle did not agree to dismissal of the '239 patent claims and counterclaims at large at that time.

To mitigate its risk, Eagle provided Par with a proposed revised stipulation that made clear that Eagle may rely on the facts pleaded regarding inequitable conduct for the '239 patent and seek a finding of unenforceability for the '239 patent to the extent necessary to establish unenforceability of the remaining patents-in-suit. (Ex. 6, Stipulation of Dismissal of Claims of the '239, '223 and '478 Patents (11/21/2019).) But Par refused. (Ex. 7, Email from Rhoad to Kwon (12/2/2019).) Instead, without explanation, Par replaced Eagle's proposal with vague, non-specific language that left unclear what, if anything, regarding Eagle's unenforceability counterclaim on the '239 patent Eagle may continue to rely on for its counterclaims on the other patents. (Ex. 8, Par's Revised Stipulation of Dismissal (12/2/2019).) At bottom, Par should not be permitted to dismiss the '239 patent unenforceability counterclaim to the prejudice of Eagle's counterclaims on the remaining patents-in-suit.

Nor should Par be permitted to escape a full and final judgment on the '478 and '223 patents. Indeed, these patents never should have been asserted in the first place. ████████████████████████████████████████████
████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████ To keep its meritless

infringement claims alive, Par successfully argued to this Court during *Markman*

that acetic acid in solution *is* an "acetate buffer." (*See, e.g.*, D.I. 61 at 47–50 & nn.

22–25; July 1, 2019 Hr'g Tr. 17:8–20:13, 22:12–23:6.) ██████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████ Eagle

respectfully submits that Par should not be permitted to walk away with a bare

stipulation that allows it to continue to hold the threat of suit on these patents over

Eagle's ANDA product.

Under these circumstances, Par has failed to demonstrate a lack of case or

controversy for the '239, '448 and '223 patents. And dismissal of Eagle's

counterclaims without the safeguards in Eagle's proposed revised stipulation and

covenant would unfairly prejudice Eagle. Par's motion should thus be denied.

Further, and in any event, Par should be ordered to promptly respond to

Eagle's counterclaims that will remain in suit regardless of Par's motion, including

its unenforceability counterclaims with respect to the remaining patents-in-suit.

## LEGAL STANDARDS

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *ArcelorMittal v. AK Steel Corp.*, 856 F.3d 1365, 1370 (Fed. Cir. 2017) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  But the holder of an intellectual property right cannot automatically moot a case simply by ending its enforcement activity.  *Id.*  Rather, "the patentee 'bears the formidable burden of showing' 'that "it could not reasonably be expected" to resume its enforcement efforts against' the covenanted, accused infringer" to eliminate any case or controversy.  *Id.* (quoting *Already*, 568 U.S. at 92).  This applies even if the rights holder agrees to dismiss its claims with prejudice.  *See, e.g., Already*, 568 U.S. at 92.

One way for the rights holder to meet its burden is to provide a covenant not to sue.  *See, e.g., Already*, 568 U.S. at 93–94; *Arris Grp., Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1380–81 (Fed. Cir. 2011).  But even such a covenant may not be sufficient if it does not entirely moot the controversy.  *ArcelorMittal.* 856 F.3d at 1370–71.  Rather, "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant."  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).

## **ARGUMENT**

**I.    Par Has Not Met Its "Formidable Burden" Of Showing No Case Or Controversy Remains On Its "Dropped Patents"**

Par's sole basis for seeking dismissal of Eagle's counterclaims is that, because "Par no longer asserts claims for infringement of the Dropped Patents and has offered to have those claims dismissed with prejudice," "Eagle cannot establish that there remains any justiciable case or controversy between the parties as to those Patents." (D.I. 144 at 5.)  More specifically, Par argues Eagle's counterclaims should be dismissed because "Par has unequivocally advised Eagle that it is no longer asserting any claim for infringement of the Dropped Patents against Eagle[,] Par did not include the Dropped Patents in its final list of asserted claims and infringement contentions, and Par has agreed to stipulate to the dismissal of its infringement claims relating to the Dropped Patents with prejudice." (*Id.* at 6.)

According to binding precedent, however, Par's assertions are plainly insufficient to divest this Court of subject matter jurisdiction.  The Supreme Court's decision in *Already v. Nike* controls.  In that case, Nike filed suit alleging that Already's shoes violated its trademark.  568 U.S. at 88.  Already counterclaimed that the trademark was invalid.  *Id.*  Subsequently, Nike issued a covenant not to sue promising that Nike "would not raise against Already or any affiliated entity any trademark or unfair competition claim based on any of Already's existing footwear designs, or any future Already designs that constituted a 'colorable imitation' of

7

Already's current products." *Id.* at 89.  Nike moved to dismiss its claims with prejudice and Already's counterclaims without prejudice.  *Id.*

The Court stated that, under the "voluntary cessation" doctrine, Nike had the burden to show "it 'could not reasonably be expected' to resume its enforcement efforts against Already." *Id.* at 92 (citation omitted).  The Court rejected Nike's argument that "when a defendant makes a judicially enforceable commitment to avoid the conduct that forms the basis for an Article III controversy, there is no reason to apply a special rule premised on the defendant's unfettered ability to 'return to [its] old ways.'" *Id.* (alteration in original) (citation omitted).  It was only the provision and language of Nike's covenant not to sue that mooted the case:

> The breadth of this covenant suffices to meet the burden imposed by the voluntary cessation test. The covenant is unconditional and irrevocable. Beyond simply prohibiting Nike from filing suit, it prohibits Nike from making any claim or any demand. It reaches beyond Already to protect Already's distributors and customers. And it covers not just current or previous designs, but any colorable imitations.

*Id.* at 93.  These same principles apply equally in patent cases.  *See, e.g.*, *ArcelorMittal*, 856 F.3d at 1370–71.

Here, Par does not even attempt to meet its "formidable burden" of showing "it could not reasonably be expected to resume its enforcement efforts against [Eagle]." *E.g., id.*  Par's brief does not even touch on that issue.  Nor could it meet that burden, as it has flatly refused to provide any covenant not to sue, much less one that would prevent it from suing Eagle's distributors, customers and other involved

8

third parties, or Eagle based on future amendments to its ANDA, however minor. (*See* Ex. 7.) And it has done so on the flawed premise that "the proposed covenant goes well beyond any relief that Eagle could achieve in the litigation." (*Id.*) Par is wrong, as a finding of non-infringement, invalidity, or unenforceability based on Eagle's counterclaims would prevent Par from asserting the patents under these circumstances. Par's refusal to provide an adequate covenant not to sue raises the specter that it does indeed intend to hold these patents over Eagle's activities and those of its partners going forward.

Par's motion should be denied for these reasons alone.

### A. Par's stipulation does not remove the threat of suit on the patents following routine amendments to Eagle's ANDA

Even after the dismissal of the "Dropped Patents," Eagle will be left with a reasonable apprehension that Par could initiate a repeat infringement suit with the same patents against the same ANDA based on minor amendments. Drug products under the purview of FDA review, whether brand or generic, are regularly updated to meet regulatory requirements. Such requirements obligate filers to amend their applications for a broad array of reasons, such as to reflect newly discovered safety, efficacy or stability information, to certify against a new patent listed in the Orange Book, to notify the FDA of changes to the source of drug product components, and to otherwise address FDA comments. ANDAs are "routinely amended during the [] regulatory process" and such amendments are "almost certain to occur." *In re*

*Rivastigmine Patent Litig.*, No. 05 MD 1661(HB)(JCF), 2007 WL 1154000, at *7 &

n.11 (S.D.N.Y. Apr. 19, 2007) (alteration in original).

In similar circumstances, courts have denied motions to dismiss, or only

granted them under strict conditions, even when the patentee offered a covenant not

to sue.  For example, in *Rivastigmine*, the patentee provided a covenant not to sue

and moved to dismiss its own claims with prejudice and the defendants'

counterclaims without prejudice.  2007 WL 1154000, at *1. The court conditioned

dismissal on the patentee adding ANDA amendments to the covenant, observing that

"in order to ensure that any case or controversy relating to [the patentee's] claims . . .

is fully and finally settled, language covering *amendments* to [defendants'] ANDAs

should be added to the covenants not to sue."  *Id*. at *7 (emphasis added).

Similarly, in *AstraZeneca LP v. Breath Ltd.*, the court applied *Already v. Nike*

to hold that a covenant not to sue was insufficient to moot the case:

> Unlike in *Nike*, AstraZeneca's covenant does not state that it is
> unconditional and irrevocable and does not cover [defendants']
> suppliers, distributors, and customers. Further, and most importantly, it
> only covers Apotex's Abbreviated New Drug Application ("ANDA")
> *as originally filed* with the FDA *as of a particular date*.

No. 08-1512 (RMB/AMD), 2013 WL 2404167, at *3 (D.N.J. May 31, 2013).  In a

comparable context, courts have held that a covenant that only covers current forms

of software and excludes routine updates cannot eliminate case or controversy.  *See,*

*e.g.*, *BIS Advanced Software Sys., Ltd. v. Red Bend Software, Inc.*, No. Civ. A. 04-

10

11690-RWZ, 2006 WL 753246, at *1 (D. Mass. Mar. 22, 2006) (declining to dismiss declaratory judgment counterclaims after infringement claims dismissed "[b]ecause defendant regularly updates its products, however, it is still vulnerable to an infringement suit.").

Here, Par does not even offer a covenant not to sue, much less one that would prevent it from bringing suit after routine amendments to Eagle's ANDA. The magnitude of uncertainty is substantial. Eagle's ANDA, as with most ANDAs, has been and will be amended from time-to-time to meet regulatory requirements, both before and after FDA approval. ████████████████████ ████████████████████████████████████ ████████████████████████████ Thus, without assurance from Par that it will not reassert the "Dropped Patents" against Eagle based on any minor amendment, Eagle will be left uncertain of whether it may safely launch its ANDA product without threat of suit.

**B.    Par's stipulation does not remove the threat of suit against Eagle's suppliers, distributors, and customers**

Despite Par's promise to withdraw its claims against *Eagle*, Eagle is left with no assurance that Par will not try to thwart Eagle's plans by going after other entities involved with its ANDA product. ████████████████████ ████████████████████ Nor will Eagle itself use the ANDA product; it will be administered by the end users, *i.e.*, healthcare providers

11

or patients.  Par's proposed stipulation does not address whether these third parties

will remain subject to suit from Par.

This concern is a real one.  ████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████

        ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████  It also leaves open the

possibility that Par might sue Eagle's customers for using its ANDA product, forcing

Eagle to step in and defend those claims.  Such an open controversy will hamper

Eagle's efforts to supply, promote and sell its product.  Eagle should not be left to

bear the risk of Par end-running its own stipulation of dismissal by simply suing another party in connection with the use of Eagle's ANDA product.

As discussed above, Courts have repeatedly held that, where the terms of dismissal do not protect third parties involved with an accused infringing product, dismissal is insufficient to remove case or controversy. *See, e.g.*, *AstraZeneca*. 2013 WL 2404167, at *3. And in *Rivastigmine*, the court only held that including the defendants' "suppliers, distributors, customers, partners, or their successors and assigns" in the covenant not to sue as a condition of dismissal was "unnecessary" because the patentee made a binding commitment in its brief. 2007 WL 1154000, at *6.

Other courts similarly have held covenants that fail to protect third parties are insufficient to moot the controversy. *See, e.g.*, *ActiveVideo Networks, Inc. v. Trans Video Elecs., Ltd.*, 975 F. Supp. 2d 1083, 1094–96 (N.D. Cal. 2013) (holding that a covenant not to sue was insufficient where it did not apply to customers); *SanDisk Corp. v. Mobile Media Ideas LLC*, No. C 11–00597 CW, 2011 WL 1990662, *2–3 (N.D. Cal. May 23, 2011) ("[Patentee]'s covenant not to sue is not sufficient to extinguish the actual controversy in this case. By only addressing [defendant], [patentee]'s covenant does not eliminate the possibility that [the defendant]'s customers may face a patent infringement lawsuit by [patentee]."); *WS Packaging Grp., Inc. v. Glob. Commerce Grp., LLC*, No. 06-C-674, 2007 WL 205559, at *2–4

13

(E.D. Wis. Jan. 24, 2007) (ruling that patentee's covenant not to sue that did not

apply to the accused infringer's customer's did not moot the case or controversy); *cf.*

*Already*, 568 U.S. at 93 (relying in part on fact that covenant not to sue extended to

related business entities, including distributors and customers).

### C. Par's cited cases are distinguishable and do not support dismissal

In contrast to the above, Par's cited cases are distinguishable and do not

support dismissal here.  As an initial matter, all of Par's cited cases were decided

before the Supreme Court's decision in *Already v. Nike* and, to the extent they are

inconsistent with the principles in that case, they are no longer good law.

Further, in *Benitec Australia, Ltd. v. Nucleonics, Inc.*, the defendant's

activities were protected by the safe harbor for activities done in furtherance of

regulatory approval and the defendant did not anticipate filing an application for

FDA approval for years, if ever.  495 F.3d 1340, 1345–48 (Fed. Cir. 2007).  The

court thus held that "[t]he fact that [defendant] may file an NDA in a few years does

not provide the immediacy and reality required for a declaratory judgment." *Id.* at

1346.  Here, by contrast, Eagle has a pending ANDA filed with the FDA requiring

continual and periodic amendment and, even after dismissal, would be under threat

from suit at any time, along with its distributors, suppliers and customers.

In each of *Jervis B. Webb*, *Streck*, and *Fox*, also cited by Par, the Federal

Circuit held that the district court lacked jurisdiction to find certain claims of the

14

patents-in-suit invalid because the plaintiffs had never affirmatively asserted those claims in their contentions and the parties all acknowledged that the infringing products lacked critical components of the claims. *See Jervis B. Webb Co. v. S. Sys., Inc.*, 742 F.2d 1388, 1399 (Fed. Cir. 1984); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1283–84 (Fed. Cir. 2012) ("[H]ere, both parties were on notice from the start of litigation that the scope of claims at issue was only a subset of the full patents-in-suit and, significantly, did not include Claim 3 of any patent."); *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1308 (Fed. Cir. 2012). In this case, Par *did* assert that Eagle's ANDA product meets the claims of the "Dropped Patents," and has not acknowledged non-infringement or agreed not to bring suit on the patents in future. (*See, e.g.*, D.I. 1 at 1; D.I. 61 at 1 n.1.)

Finally, in *Pfizer, Inc. v. Ranbaxy Laboratories, Ltd.*, the court found that, where one claim of the patent-in-suit had been invalidated and the patentee provided a binding covenant not to sue with respect to the remaining claims, no further case or controversy existed. 525 F. Supp. 2d 680, 686–87 (D. Del. 2007). The court held that the possibility that the patent might be reissued "at some future point is insufficient to create the type of real and immediate legal case or controversy as required for declaratory jurisdiction and standing under Article III." *Id.* at 687. Here, in contrast, no claim of the "Dropped Patents" has yet been invalidated. And Par's refusal to provide a covenant not to sue leaves it open for Par to sue third

parties involved with Eagle's ANDA or that ANDA is amended, a possibility that is far from remote.

## II. Dismissing Eagle's Counterclaims Would Unfairly Prejudice Eagle

Eagle would be significantly prejudiced if these counterclaims were dismissed without adequate safeguards. Foremost, as discussed above, the facts underlying Eagle's counterclaims for unenforceability of the remaining patents-in-suit are intertwined with its counterclaim for unenforceability of the '239 patent. (D.I. 136 ¶¶ 158–261.) According to the doctrine of infectious unenforceability, a patent may be held unenforceable based on inequitable conduct during prosecution of a related patent. *See, e.g.*, *eSpeed Inc. v. Brokertec USA, LLC*, 417 F. Supp. 2d 580, 595 (D. Del. 2006) ("Inequitable conduct during the prosecution of a patent application can therefore render unenforceable not only the claims of that patent, but claims that issue from related applications as well."). Under this doctrine, and as explained in Eagle's Amended Counterclaims, the inequitable conduct during prosecution of the '239 patent tainted the prosecution of the remaining patents-in-suit under circumstances where: (1) the '239 patent is a parent of those remaining patents; (2) the inventors on the '239 patent are also inventors on the remaining patents-in-suit; and (3) due to the false declaration in prosecution of the '239 patent, the otherwise-invalidating Vasostrict® label was also disqualified as prior art for the remaining patents-in-suit. (*Id.* ¶¶ 158–261.)

Because Par used this motion as an excuse not to substantively respond to Eagle's unenforceability counterclaim, Eagle does not yet know what Par's positions will be in response to those counterclaims. Par may contend, for example, that an explicit finding of unenforceability of the '239 patent is necessary in order to establish a claim for infectious unenforceability on the remaining patents-in-suit. Although Eagle believes such a position would be without legal basis, to the extent Par does adopt such position, Eagle should not be hamstrung in proceeding with its unenforceability counterclaim on the '239 patent or, at the very least, relying on the facts pleaded in support of that counterclaim.

Eagle's concern is not a mere hypothetical, given Par's prior use of its dropped claims on the '239 patent to resist discovery relevant to Eagle's unenforceability counterclaims on all of the patents-in-suit. The risk is heightened here given Par's unwillingness to stipulate that Eagle may rely on the facts underlying its counterclaim for the '239 patent, and/or seek a finding of unenforceability of the '239 patent, if necessary. Par's replacement language—that "[n]othing in this Stipulation is intended to be or shall be deemed to be an admission as to any disputed fact between the parties relating to any of the remaining claims, counterclaims or defenses in this action, or to bar a party from seeking to prove any predicate facts in support thereof"—is vague and evades the issue, failing to provide Eagle with the necessary certainty. (Ex. 8.)

This is an additional reason not to dismiss Eagle's counterclaim for unenforceability of the '239 patent. At the very least, any order of dismissal should make clear that Eagle is permitted to rely on its pleaded facts regarding unenforceability of the '239 patent, and to pursue a finding that the '239 patent is unenforceable, to the extent necessary to support of its counterclaims of unenforceability for the remaining patents-in-suit.

## III. If Par Agrees To Eagle's Proposed Stipulation And Covenant not to sue, Eagle Would Agree To Dismissal Of Its Counterclaims Without Prejudice

As stated above, Eagle provided Par with a covenant not to sue and proposed stipulation to dismiss that address the deficiencies discussed in the instant answering brief. (Ex. 10, Covenant Not to Sue re '239, '223, and '478 Patents (11/21/2019).) Should Par agree to Eagle's proposals, Eagle would not oppose dismissing its counterclaims on the '239, '478 and '223 patents without prejudice.

## IV. Par Should Be Compelled To Promptly Respond To Eagle's Remaining Counterclaims

On October 28, 2019, without objection from Par, Eagle filed its Amended Counterclaims, setting forth its contentions for unenforceability of all claims of all of the patents-in-suit, based in part (but not only) on the inequitable conduct during prosecution of the '239 patent. (D.I. 131 at 1; D.I. 136 ¶¶ 60–151 263–353.) On the day it was due to file its answer to those counterclaims, Par sought a week's extension on the purported basis that it needed extra time due to the length of the

18

amended pleading.  (Ex. 11, Email from Farnan to Palapura (11/13/2019).)  Even though this meant that Eagle would not have Par's answer before the due date for opening expert reports, Eagle consented on the condition that it be permitted to take Par's answer into account in its reply reports.  (Ex. 12, Email from Farnan to Palapura (11/13/2019).)  After the additional week was up, however, Par did not file any substantive answer to Eagle's counterclaims, but instead filed the instant motion. (D.I. 140; D.I. 143.)

As a result, Eagle still does not know what Par's contentions are with respect to Eagle's unenforceability counterclaims.  Nor does it seem Par has any intention of providing those contentions any time soon, at least before this motion is decided. Given that expert discovery is ongoing and responsive reports are due within weeks, with reply reports to follow shortly thereafter, this leaves Eagle in the position of having to provide expert discovery without the benefit of knowing Par's positions on the counterclaims.

Under Federal Rule of Civil Procedure 12(a)(4), a motion to dismiss tolls the time to respond to a pleading until 14 days after notice of the court's action "[u]nless the court sets a different time."  Here, time is of the essence given the case schedule, and any further delay will only further prejudice Eagle and raise the possibility of trial by ambush.  And there is no reason why Par cannot immediately provide its answer to the counterclaims that certainly will remain in the case (including the

pleadings relating to the '239 patent unenforceability claim that underlie Eagle's infectious unenforceability counterclaim for the remaining patents-in-suit).  Par has had Eagle's Amended Answer and Counterclaims now for well over a month and it already sought, and was granted, an extension of the time to respond on the basis of the pleading length.  No further delay is warranted.

## **CONCLUSION**

For the foregoing reasons, Par's motion to dismiss should be denied, or in the alternative, should only be granted on the condition that Par enters into the stipulation and covenant not to sue proposed by Eagle, as set forth in Exhibits 6 and 10, respectively.

Furthermore, the Court should compel Par to promptly respond to Eagle's remaining counterclaims.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Jay P. Lefkowitz, P.C.
Jeanna M. Wacker
Benjamin A. Lasky
Sam Kwon
Christopher J. Citro
Ashley Cade
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY  10022
Tel:  (212) 446-4800

By:    /s/ David E. Moore
      David E. Moore (#3983)
      Bindu A. Palapura (#5370)
      Stephanie E. O'Byrne (#4446)
      Hercules Plaza, 6th Floor
      1313 N. Market Street
      Wilmington, DE  19801
      Tel:  (302) 984-6000
      dmoore@potteranderson.com
      bpalapura@potteranderson.com
      sobyrne@potteranderson.com

*Attorneys for Defendant Eagle
Pharmaceuticals Inc.*

Dated:   December 6, 2019
Public Version Dated: December 13, 2019
6509300 / 45185

21