# EXHIBIT A

# REDACTED

# EXHIBIT B

# Field Alert Report Submission

## Questions and Answers
## Guidance for Industry

### *DRAFT GUIDANCE*

**This guidance document is being distributed for comment purposes only.**

Comments and suggestions regarding this draft document should be submitted within 60 days of publication in the *Federal Register* of the notice announcing the availability of the draft guidance. Submit electronic comments to https://www.regulations.gov. Submit written comments to the Dockets Management Staff (HFA-305), Food and Drug Administration, 5630 Fishers Lane, rm. 1061, Rockville, MD 20852. All comments should be identified with the docket number listed in the notice of availability that publishes in the *Federal Register*.

For questions regarding this draft document, contact (CDER) Mamta Gautam-Basak 301-796-0712; (CBER) Office of Communication, Outreach and Development, 800-835-4709 or 240-402-8010; or (ORA) Rachel Harrington 410-779-5441.

**U.S. Department of Health and Human Services**
**Food and Drug Administration**
**Center for Drug Evaluation and Research (CDER)**
**Center for Biologics Evaluation and Research (CBER)**
**Office of Regulatory Affairs (ORA)**

**July 2018**
**Pharmaceutical Quality/Manufacturing Standards (CGMP)**

# Field Alert Report Submission

## Questions and Answers Guidance for Industry

*Additional copies are available from:*
*Office of Communications, Division of Drug Information*
*Center for Drug Evaluation and Research*
*Food and Drug Administration*
*10001 New Hampshire Ave., Hillandale Bldg., 4th Floor*
*Silver Spring, MD 20993-0002*
*Phone: 855-543-3784 or 301-796-3400; Fax: 301-431-6353*
*Email: druginfo@fda.hhs.gov*
*https://www.fda.gov/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/default.htm*
*and/or*
*Office of Communication, Outreach and Development*
*Center for Biologics Evaluation and Research*
*Food and Drug Administration*
*10903 New Hampshire Ave., Bldg. 71, Room 3128*
*Silver Spring, MD 20993-0002*
*Phone: 800-835-4709 or 240-402-8010*
*Email: ocod@fda.hhs.gov*
*https://www.fda.gov/BiologicsBloodVaccines/GuidanceComplianceRegulatoryInformation/Guidances/default.htm*

**U.S. Department of Health and Human Services**
**Food and Drug Administration**
**Center for Drug Evaluation and Research (CDER)**
**Center for Biologics Evaluation and Research (CBER)**
**Office of Regulatory Affairs (ORA)**

**July 2018**
**Pharmaceutical Quality/Manufacturing Standards (CGMP)**

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

## TABLE OF CONTENTS

I.      **INTRODUCTION**.................................................................................................... **1**

II.     **BACKGROUND** .................................................................................................... **1**

III.    **QUESTIONS AND ANSWERS** ............................................................................ **2**

    1.    **What is a FAR and what triggers its submission?** ........................................ **2**

    2.    **Who is responsible for submitting the FAR?** ............................................... **6**

    3.    **When should I submit a FAR?** ...................................................................... **6**

    4.    **How do I submit a FAR?** ............................................................................... **6**

    5.    **Where do I submit a FAR?** ........................................................................... **8**

    6.    **Should I submit a follow-up or final FAR?** ................................................. **9**

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

# Field Alert Report Submission
# Questions and Answers
# Guidance for Industry[1]

> This draft guidance, when finalized, will represent the current thinking of the Food and Drug Administration (FDA or Agency) on this topic. It does not establish any rights for any person and is not binding on FDA or the public. You can use an alternative approach if it satisfies the requirements of the applicable statutes and regulations. To discuss an alternative approach, contact the FDA staff responsible for this guidance as listed on the title page.

## I.       INTRODUCTION

This guidance provides the agency's current thinking regarding the requirements for submission of field alert reports (FARs) by applicants of new drug applications (NDAs) and abbreviated new drug applications (ANDAs) and outlines FDA's recommendations for FAR submissions to help increase their consistency and relevancy. The guidance also addresses certain frequently asked questions.

In general, FDA's guidance documents do not establish legally enforceable responsibilities. Instead, guidances describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited. The use of the word *should* in Agency guidances means that something is suggested or recommended, but not required.

## II.      BACKGROUND

The FAR regulations found in 21 CFR 314.81(b)(1) and 314.98(b) establish an early warning system to help protect patient health. Under these regulations, NDA and ANDA applicants must submit certain information to FDA about distributed drug products regulated by the Center for Drug Evaluation and Research (CDER) or the Center for Biologics Evaluation and Research (CBER). Specifically, an NDA or ANDA applicant[2] must submit a FAR to FDA within 3 working days of receiving the following kinds of information for distributed drug product(s):

---

[1] This guidance has been prepared by the Center for Drug Evaluation and Research in cooperation with the Center for Biologics Evaluation and Research and the Office of Regulatory Affairs at the Food and Drug Administration.

[2] For purposes of this guidance, *applicant* has the meaning set forth in 21 CFR 314.3. Under § 314.98(b), each ANDA applicant must make the reports required under § 314.81.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

39      (i) Information concerning any incident that causes the drug product or its
40      labeling to be mistaken for, or applied to, another article.
41
42      (ii) Information concerning any bacteriological[3] contamination, or any significant
43      chemical, physical, or other change or deterioration in the distributed drug
44      product, or any failure of one or more distributed batches of the drug product to
45      meet the specification established for it in the application.
46
47   On May 2, 2013, FDA issued a *Federal Register* notice to notify the pharmaceutical industry
48   about a voluntary pilot project using extensible markup language (XML) functionality to
49   automate Form FDA 3331, NDA-Field Alert Report. The pilot, a collaborative effort between
50   CDER and the Office of Regulatory Affairs (ORA), was the first step in moving FDA away from
51   manual data entry to a more automated system of receiving FARs. It also allowed both CDER
52   and ORA to receive FAR information simultaneously. All firms were encouraged to participate.
53
54   In June 2017, the pilot project was completed and a new version of the automated form—Form
55   FDA 3331a, NDA/ANDA Field Alert—which incorporates feedback from pilot project
56   participants, was approved by the Office of Management and Budget (OMB). Form FDA 3331a
57   is available on FDA's Field Alert Reports website.[4] Although CBER did not participate in the
58   pilot program, applicants holding NDAs or ANDAs regulated by CBER may also use the new
59   form.
60
61
62   **III.      QUESTIONS AND ANSWERS**
63
64   This section outlines your responsibilities as an NDA or ANDA applicant regarding FAR
65   submissions and makes recommendations about providing information to FDA about any root
66   cause investigations, corrective actions, and other actions you take in response to a FAR.
67
68   **1.      What is a FAR and what triggers its submission?**
69
70   *a.      What is a FAR?*
71
72   FARs are part of an early warning system to protect patient health. Per § 314.81(b)(1), you must
73   submit a FAR for distributed drug products and articles to FDA if you receive information of the
74   following kinds:
75

---

[3] FDA has interpreted the term *bacteriological* used in § 314.81(b)(1)(ii) to mean *microbiological*, which includes any kind of microbial contamination, such as bacteria, yeast, fungus, or virus. The contamination of distributed drug product by yeast, fungus, or virus would also be reportable as a *change or deterioration in the distributed drug product,* or as a *failure of one or more distributed batches of the drug product to meet the specification established for it in the application*.

[4] See https://www.fda.gov/drugs/guidancecomplianceregulatoryinformation/surveillance/ucm529729.htm.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

76          • Information concerning any incident that causes a drug product or its labeling to be
77            mistaken for, or applied to, another article.
78
79          • Information concerning any bacteriological contamination, or any significant chemical,
80            physical, or other change or deterioration in the distributed drug product, or any failure of
81            one or more distributed batches of the drug product to meet the specification established
82            for it in the application.
83
84    You should submit a FAR using Form FDA 3331a (see question 4a). In that form, and in this
85    guidance, the term *problem* refers to the incident[5] or possible/actual quality issue[6] that is the
86    subject of the FAR.
87
88    *b.    What are initial, follow-up, and final FARs?*
89
90    This guidance uses the terms *initial*, *follow-up*, and *final* FARs, consistent with the language in
91    Form FDA 3331a.
92
93          • *Initial FAR* refers to the FAR that you submit to comply with the requirements of
94            § 314.81(b)(1), and it is the first time you have submitted a FAR about a specific problem
95            as described in question 1a.
96
97          • *Follow-up FAR* refers to any subsequent FARs you submit to provide additional
98            information about the problem identified in the initial FAR. Examples of additional
99            information include significant findings of the ongoing investigation; additional facilities
100           or lots identified within scope; and sample analyses, laboratory test results, or potential
101           root causes identified.
102
103         • *Final FAR* refers to the FAR you submit to close out the initial FAR identifying the root
104           cause and describing any corrective actions taken or to be taken.
105
106   Although follow-up and final FARs are not required, they are recommended. For more
107   information on follow-up and final FARs, see III.6 in this guidance.
108

---

[5] See § 314.81(b)(1)(i).

[6] See § 314.81(b)(1)(ii).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

109    *c.    What is considered a significant chemical, physical, or other change or deterioration in*
110        *the distributed product?*

111

112    To determine whether a chemical, physical, or other change or deterioration in the distributed
113    drug product is significant, you should evaluate the potential impact of the change or
114    deterioration on the drug product's identity, strength, purity, stability, and efficacy and how that
115    change or deterioration could impact an individual using the product. Any such assessment
116    should be based on factors specific to your distributed product. These factors could include
117    intended use, route of administration, dosage, length of treatment, and patient population.

118

119    You should also clearly document an investigation conducted according to 21 CFR 211.192
120    (production record review) or 211.198 (complaint files), including the determination of whether
121    a problem resulted in a significant chemical, physical, or other change or deterioration, along
122    with the rationale (including factors considered) for the determination. (See, e.g., question 1d for
123    information about consumer complaints.)

124

125    *d.    Does every consumer complaint warrant submission of a FAR?*

126

127    No. Every consumer complaint should be evaluated within 3 working days to determine if the
128    information provided in the complaint meets the criteria outlined in § 314.81(b)(1). You must
129    submit a FAR within that time frame if you determine that the information identified in the
130    complaint meets the criteria for a FAR.

131

132    *e.    Do I have to submit a FAR for packaging or components used in the manufacture of the*
133        *distributed product?*

134

135    If you receive information about packaging or components that meets the criteria set forth in
136    § 314.81(b)(1), you must submit a FAR within 3 working days of your receipt of that
137    information. For example, if you receive information that a stopper used for a vial could result in
138    contamination of a distributed batch, the information must be submitted in a FAR.

139

140    *f.    If the product approved under an NDA/ANDA is only distributed outside the United*
141        *States, am I still subject to the FAR requirements?*

142

143    Yes. Any drug product marketed under an approved NDA or ANDA, whether distributed
144    domestically or abroad, is subject to FAR requirements.[7]

145

146    *g.    If a product has not been distributed and an out-of-specification (OOS) result is*
147        *discovered, is a FAR still required?*

148

149    No. A FAR is only required for distributed drug products. However, if you discover an OOS
150    result and your investigation[8] for example, indicates a failure of one or more distributed batches

---

[7] See § 314.81(b)(1).

[8] See § 211.192.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

151    of the drug product to meet the specification established in the application, or other kinds of
152    information as specified in § 314.81(b)(1), then you must submit a FAR.[9]

153

154    h.    *If an OOS result for a distributed drug product is discovered during stability testing, but*
155          *the result is invalidated within 3 working days, do I need to submit a FAR?*

156

157    No. OOS results for a distributed drug product that are scientifically invalidated (e.g., an
158    analytical laboratory error is confirmed) within 3 working days do not require a FAR. If an OOS
159    result is not scientifically invalidated, you must submit a FAR within 3 working days of your
160    initial receipt of the OOS information.

161

162    i.    *Do aseptic process simulation (media fill) failures for a distributed drug product require*
163          *a FAR?*

164

165    A media fill validation failure indicates a potential problem related to sterility assurance that
166    requires an investigation, including assessment of the impact on distributed drug products
167    produced since the last successful media fill.[10] As such, you must submit a FAR for any
168    distributed drug product within the scope of the media fill failure investigation within 3 working
169    days of receiving information about such a failure if the information meets the criteria set forth in
170    § 314.81(b)(1).

171

172    j.    *If the root cause of a problem related to a distributed drug product is identified and*
173          *corrected within 3 working days, should I still submit a FAR?*

174

175    Yes, if you receive information as outlined in § 314.81(b)(1), you must submit a FAR within 3
176    working days regardless of whether an investigation identifies a root cause or leads to a
177    corrective action. The report should include detailed information regarding the identified root
178    cause and any completed or ongoing corrective action.

179

180    k.    *Is a FAR required if a recall is initiated?*

181

182    If the recall is for an NDA/ANDA product and the information leading to the recall meets the
183    criteria under § 314.81(b)(1), you must submit a FAR. You should also submit a recall
184    notification to FDA through your local recall coordinator
185    (http://www.fda.gov/Safety/Recalls/IndustryGuidance/ucm129334.htm). If the recall is initiated
186    after an initial FAR is submitted, we encourage you to submit a follow-up or final FAR at the
187    time of the recall notification.[11]

---

[9] See also guidance for industry *Investigating Out-of-Specification (OOS) Test Results for Pharmaceutical Production*. We update guidances periodically. For the most recent version of a guidance, check the FDA guidance web page at https://www.fda.gov/RegulatoryInformation/Guidances/default.htm.

[10] See § 211.192.

[11] See 21 CFR part 7; FDA, 2016, Chapter 7: Recall Activities, Investigations Operations Manual; and guidance for industry *Product Recalls, Including Removals and Corrections*.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

**2.     Who is responsible for submitting the FAR?**

As the NDA/ANDA applicant, you must submit the FAR.[12] If you have a contractual agreement with another person or entity to perform manufacturing, holding, packaging, labeling, or distribution activities or services for your products, you still hold ultimate responsibility for reporting FARs. You should establish, maintain, and follow a procedure for receiving and responding to any reportable information from contracted entities concerning your products.[13]

**3.     When should I submit a FAR?**

*a.     What is the required time frame for the submission of a FAR?*

You must submit a FAR within 3 working days of receipt of the information described in § 314.81(b)(1). We consider *working days* to be any day from Monday through Friday, excluding U.S. Federal holidays. For example, if any information meeting the criteria requiring a FAR is identified on Friday (day 0), then day 1 begins on the first working day after the information is identified (Monday), and you must submit the FAR by close of business on Wednesday (day 3). This time frame applies regardless of where the information meeting the criteria requiring a FAR is identified. For example, the day a contract lab learns of a sterility failure is day 0, and you must submit the FAR by close of business on day 3.

*b.     What will happen if I do not submit a FAR within the 3-day time frame?*

If you fail to submit a required FAR within this time frame, you would—at a minimum—be in violation of § 314.81(b)(1). You would also be in violation of section 505(k) of the Federal Food, Drug, and Cosmetic Act (FD&C Act).[14] Violating section 505(k) is a prohibited act under section 301(e) of the FD&C Act.[15] We may include this as an observation on Form FDA 483, Inspectional Observations. Any FDA finding that you have failed to submit a FAR, as required, may result in a regulatory action, whether or not the finding was cited on a Form FDA 483.

**4.     How do I submit a FAR?**

*a.     Is a form available to submit FARs?*

Yes. We recommend that you use Form FDA 3331a to submit your FARs electronically. Submitting electronically will expedite FDA's review process and fulfill your obligation to submit the FAR to the relevant district office. We will, however, accept other types of submissions as described in § 314.81(b)(1).

---

[12] See §§ 314.81(b) and 314.98(b).

[13] See guidance for industry *Contract Manufacturing Arrangements for Drugs: Quality Agreements.*

[14] 21 U.S.C. 355(k).

[15] 21 U.S.C. 331(e).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

227
228 Form FDA 3331a and its instructions are available on the FAR website at
229 https://www.fda.gov/drugs/guidancecomplianceregulatoryinformation/surveillance/ucm529729.h
230 tm.
231
232 *b.   Is it necessary to submit a paper copy of a FAR if the FAR has been submitted*
233 *electronically?*
234
235 No. Electronic submission of Form FDA 3331a as outlined in the Form FDA 3331a instructions
236 meets FAR requirements under § 314.81(b)(1).
237
238 *c.   Does submission of FDA Form 3331a satisfy the written follow-up requirement for FARs*
239 *submitted initially by telephone?*
240
241 Yes, using Form FDA 3331a as instructed will satisfy the written follow-up requirement for
242 FARs initially submitted by telephone or other rapid means as set forth in § 314.81(b)(1). Once
243 you use Form FDA 3331a to submit your FAR electronically, the information you entered will
244 be available to CDER or CBER and the FDA district office responsible for the facility involved.
245
246 *d.   Can FARs associated with multiple NDAs/ANDAs be submitted on one form?*
247
248 No. If multiple NDAs or ANDAs are involved, submit one Form FDA 3331a for each NDA or
249 ANDA. See question 4e for additional information on submitting FARs for a facility-wide
250 problem that affects drug products covered by multiple applications or application types.
251
252 *e.   How should I report a facility-wide problem that affects drug products covered by*
253 *multiple applications or application types?*
254
255 You must submit a separate initial FAR for each application (NDA or ANDA) that is affected by
256 the problem.[16] If you conduct a single comprehensive investigation into the problem at a facility
257 and you submit a follow-up or final FAR, you can submit one follow-up and/or final FAR that
258 references all of the affected products, including the NDA/ANDA number(s) and the date(s) the
259 problem was identified.
260
261 *f.   What if I don't know the information asked for on Form FDA 3331a at the time of*
262 *submission?*
263
264 In an initial FAR, provide whatever information you have that is related to the problem within 3
265 working days of receipt of the information described in § 314.81(b)(1). Please be sure to report
266 the NDA/ANDA number, the drug product generic name and trade/brand name (if any), the
267 product quality issue, and your contact information. When you learn more about the problem
268 reported in the initial FAR, we recommend that you submit any new information in a follow-up
269 or final FAR (see III.6).

---

[16] See § 314.81(a).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

270
271     *g.     Form FDA 3331a asks for the "date when notified about problem(s) or when problem(s)*
272             *first became known to application holder." Is this the date when the information was*
273             *confirmed as an actual problem?*
274
275     No, it is the date you received information of the kinds outlined in § 314.81(b)(1). Any follow-up
276     and final FARs should contain the same initial date.
277

## 5.     Where do I submit a FAR?

279
280     When you use the automated features of Form FDA 3331a, your FAR will be submitted
281     simultaneously to CDER and to the FDA district office you select on page ii of the form. CDER
282     will forward FARs to CBER, as appropriate. Form FDA 3331a provides contact information
283     (e.g., email and postal addresses) for all district offices. For specific information about which
284     district office to select on page ii of the form, see the questions and answers below.
285
286     *a.     If the problem occurs at a domestic facility in the United States, where do I indicate that*
287             *facility's information on the FAR and where should I submit the FAR?*
288
289     You should list the facility information in Form FDA 3331a's box 1—"Firm Name and Address
290     Where Problem Occurred"—and select the FDA district office responsible for that facility on
291     page ii of the form. We recommend that you also cc: the district office where your headquarters
292     is located if different from the FDA district office you selected on the form.
293
294     *b.     If the problem occurs at a foreign facility, where do I indicate that facility's information*
295             *on the FAR and where should I submit the FAR?*
296
297     You should list the foreign facility information in Form FDA 3331a's box 1—"Firm Name and
298     Address Where Problem Occurred"—and, on page ii, select the FDA district office where your
299     firm's attorney, U.S. agent, or other authorized official resides or maintains a place of business in
300     the United States.[17]
301
302     *c.     If multiple firms or locations are implicated in an investigation, which firm or location*
303             *should I list on the FAR as the site where the problem occurred?*
304
305     You should enter the name and address of the finished drug product manufacturer for the NDA
306     or ANDA in Form FDA 3331a's box 1—"Firm Name and Address Where Problem Occurred."
307     However, if the problem involves the active pharmaceutical ingredient (API) or any raw
308     material, you should list the supplier's facility information in box 1 instead. If the problem
309     involves a firm other than the finished drug product manufacturer, such as a labeling and
310     packaging firm, you should list that firm's information in box 1. If any firm other than the
311     finished drug product manufacturer is listed in box 1, you should include the name and address

---

[17] See 21 CFR 207.40 and 314.50(a)(5).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

312  of the finished drug product manufacturer in box 14, "Remarks," as well as any additional sites
313  implicated but not already included in box 1.
314
315      d.      *If it is unclear where the problem occurred, which location should I list on the FAR and*
316              *where should I submit the FAR?*
317
318  If it is unclear where the problem occurred, you should list the site where, to the best of your
319  knowledge, the problem most likely occurred (see question 5c) in Form FDA 3331a's box 1—
320  "Firm Name and Address Where Problem Occurred"—and, on page ii, select the FDA district
321  office responsible for that location. For example, if your NDA/ANDA product is found to have
322  one or more bottles containing the wrong tablet at the time the FAR is submitted, it could be
323  unclear if the problem occurred at the tableting facility or during distribution in bulk containers
324  to the contract packager, packaging at a contract facility, subsequent shipping and handling, or
325  dispensing at the pharmacy. We recommend that you cc: the FDA district office where your
326  headquarters are located if different from the district office responsible for the location where the
327  problem occurred. List additional sites implicated in box 14, "Remarks."
328
329  If during the course of an investigation you wish to change the information initially provided or
330  you have determined where the problem occurred, you should update the establishment name,
331  address, and/or facility establishment identifier (FEI) number or the data universal numbering
332  system (DUNS) number of the firm where the problem occurred in a follow-up FAR. If a new
333  district office is the receiving district for your follow-up FAR, please also cc: the original district
334  office that received the initial FAR.
335
336  **6.      Should I submit a follow-up or final FAR?**
337
338  Although follow-up and final FARs are not required under § 314.81(b)(1), we recommend that
339  you submit these additional voluntary reports, when warranted, as soon as possible.[18] We use the
340  information in these reports to assess the risk to public health and the adequacy of the firm's
341  response.
342
343      a.      *When should I submit a follow-up FAR?*
344
345  Though not required, we encourage you to submit follow-up FARs when (1) there are significant
346  findings during any investigation for the same problem as that identified in the initial FAR (e.g.,
347  additional lots impacted, different locations identified) or (2) you learn that information
348  submitted in a previous FAR is incorrect.
349
350      b.      *During the open investigation, if I discover that additional lots of the same drug product*
351              *have the same issues as those identified in the initial FAR, should I submit a new FAR?*
352
353  If you choose to submit a follow-up FAR, you should submit a follow-up FAR that identifies the
354  additional lots. In the follow-up FAR, you should reference the discovery date from the initial

---

[18] For a description of follow-up and final FARs, see question 1b.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

355  FAR, update FDA on the progress of the investigation, identify corrective actions that you have
356  taken as well as those you intend to take, and provide the anticipated date for closing out the
357  investigation in Form FDA 3331a's box 14 "Remarks."
358
359  *c.      If I receive an additional consumer complaint while there is a FAR for the same problem*
360  *still being investigated, should I submit a follow-up FAR?*
361
362  No. A follow-up FAR should not be submitted if all of the following are true:
363
364  • The problem is the same as that identified in the initial FAR.
365  • The drug product is covered under the same NDA/ANDA as originally reported.
366  • The investigation into the root cause of the initial FAR is still ongoing.
367  • The drug product is part of the same lot as originally reported.
368
369  When there is an ongoing root cause investigation for a FAR (i.e., one for which no final FAR
370  has been submitted), we recommend that you provide a cumulative list of related complaints in
371  your final FAR rather than submitting a FAR for every consumer complaint received.
372
373  *d.      When should I submit the final FAR?*
374
375  We recommend submitting final FARs promptly to inform FDA when you identify the root
376  cause, take corrective action, or close the investigation. Investigations should be closed as soon
377  as possible.

# EXHIBIT C

**REDACTED**

# EXHIBIT D

**REDACTED**

# EXHIBIT E

**REDACTED**

# EXHIBIT F

**REDACTED**

# EXHIBIT G

**REDACTED**

# EXHIBIT H

# REDACTED

# EXHIBIT I

**REDACTED**

# EXHIBIT J

**REDACTED**

# EXHIBIT K

**REDACTED**

# EXHIBIT L

**REDACTED**

# EXHIBIT M

CONFIDENTIAL

Page 1

1

2          IN THE UNITED STATES DISTRICT COURT

3                DISTRICT OF DELAWARE

4

5     PAR PHARMACEUTICALS,        )

      INC., PAR STERILE           )

6     PRODUCTS, LLC, AND ENDO     )

      PAR INNOVATION              )Civil Action

7     CORPORATION, LLC,           )No. 18-823-CFC

                     Plaintiffs,  )

8                                 )

             vs.                  )

9                                 )

      EAGLE PHARMACEUTICALS,      )

10    INC.,                       )

                     Defendant.   )

11    _____     )

12

13

14              ****CONFIDENTIAL****

15          DEPOSITION OF JAMES ROMITO

16              New York, New York

17           Wednesday, October 9, 2019

18

19

20

21

22    Reported By:

23    CATHI IRISH, RPR, CRR, CLVS, CCR

24

25

CONFIDENTIAL

Page 2

```
 1
 2
 3
 4
 5
 6
 7
 8              October 9, 2019
 9              9:06 a.m.
10
11        Videotaped deposition of JAMES
12    ROMITO, held at the offices of
13    Kirkland & Ellis LLP, 601 Lexington
14    Avenue, New York, New York, before
15    Cathi Irish, a Registered Professional
16    Reporter, Certified Realtime Reporter,
17    and Notary Public of the State of
18    New York.
19
20
21
22
23
24
25
```

Page 4

```
 1
 2        THE VIDEOGRAPHER:  Good morning.
 3    We're going on the record at 9:06 a.m.
 4    on October 9, 2019.
 5        Please note that the microphones
 6    are sensitive and may pick up
 7    whispering, private conversations and
 8    cellular interference.  Please turn
 9    off all cell phones or place them away
10    from the microphones as they can
11    interfere with deposition audio.
12    Audio and video recording will
13    continue until all parties agree to go
14    off the record.
15        This is media number 1 of the
16    video deposition of James Romito taken
17    by counsel for plaintiff in the matter
18    of Par Pharmaceuticals, Incorporated,
19    Par Sterile Products, LLC, and Endo
20    Par Innovation Corporation, LLC versus
21    Eagle Pharmaceuticals, Incorporated
22    filed in the United States District
23    Court for the District of Delaware,
24    case number 18-823-CFC.
25        This deposition is being held at
```

Page 3

```
 1
 2    A P P E A R A N C E S :
 3
 4    DECHERT LLP
 5    Attorneys for Plaintiffs
 6        Cira Centre, 2929 Arch Street
 7        Philadelphia, Pennsylvania 19104
 8    BY:  JOE GRIBBIN, ESQ.
 9
10
11    KIRKLAND & ELLIS LLP
12    Attorneys for Defendant
13        601 Lexington Avenue
14        New York, New York 10022
15    BY:  JEANNA M. WACKER, ESQ.
16
17
18    ALSO PRESENT:
19        JONATHAN POPHAM, videographer
20
21
22
23
24
25
```

Page 5

```
 1
 2    Kirkland & Ellis located at
 3    601 Lexington Avenue, New York,
 4    New York.
 5        My name is Jonathan Popham from
 6    Veritext and I'm the videographer.
 7    The court reporter is Cathi Irish,
 8    also from Veritext.
 9        I'm not authorized to administer
10    an oath.  I am not related to any
11    party in this action, nor am I
12    financially interested in the outcome.
13        Counsel will now please state
14    their appearances and affiliations for
15    the record.
16        MR. GRIBBIN:  Joe Gribbin from
17    Dechert LLP for plaintiffs.
18        MS. WACKER:  Jeanna Wacker from
19    Kirkland & Ellis on behalf of
20    defendant.
21        THE VIDEOGRAPHER:  Will the court
22    reporter please swear in the witness?
23    J A M E S   R O M I T O ,   called as a
24    witness, having been duly sworn by a
25    Notary Public, was examined and
```

2 (Pages 2 - 5)

1
2      testified as follows:
3    EXAMINATION
4    BY MR. GRIBBIN:
5       Q.  Good morning, Mr. Romito.
6       A.  Good morning.
7       Q.  Can you tell me your full name?
8       A.  James Romito.
9       Q.  And what is your address?
10   ████████████████████████
11   ██
12      Q.  If I ask a question today that
13   you don't fully understand, please tell me
14   and I'll clarify, okay?
15      A.  Okay.
16      Q.  We'll take periodic breaks,
17   probably once every hour or so, but if you
18   need a break at any time just let me know.
19      A.  Okay.
20      Q.  The court reporter can only
21   record verbal responses so please answer
22   verbally, for example, yes instead of
23   uh-huh or a head nod, okay?
24      A.  Okay.
25      Q.  Are you on any medications that

1              ROMITO - CONFIDENTIAL
2    might affect your ability to answer my
3    questions today?
4       A.  No, I'm not.
5       Q.  Is there any other reason why you
6    can't answer my questions truthfully and
7    fully today?
8       A.  No.
9       Q.  You understand that you're
10   testifying under oath today; right?
11      A.  Yes.
12      Q.  That means if you are untruthful,
13   you can be prosecuted for perjury.  Do you
14   understand that?
15      A.  Yes.
16      Q.  So you're going to answer my
17   questions truthfully today; right?
18      A.  Yes.
19      Q.  If you're unwilling to testify
20   fully, the plaintiffs can ask the court
21   for an order that requires you to testify
22   fully at a second deposition.  Do you
23   understand?
24      A.  Yes.
25      Q.  So you're going to answer my

1              ROMITO - CONFIDENTIAL
2    questions fully today; right?
3       A.  To the best of my ability, yes.
4       Q.  Have you ever been deposed
5    before?
6       A.  No.
7       Q.  Have you ever testified as a
8    witness for any company?
9       A.  No.
10         (Exhibit 1, 30(b)(6) notice,
11      marked for identification.)
12   BY MR. GRIBBIN:
13      Q.  I've just handed you Exhibit 1.
14   Have you seen this document before?
15      A.  It looks similar to one I've seen
16   before.  I don't think I've seen this
17   exact document before.
18      Q.  Do you know what this is?
19      A.  Not exactly.
20      Q.  Can you turn to the page where
21   the topics begin which is page 8?
22      A.  Okay.
23      Q.  These are the topics for the
24   30(b)(6) deposition of Eagle.  Have you
25   seen these topics before?

1              ROMITO - CONFIDENTIAL
2       A.  Yes.
3       Q.  Is this one of the documents that
4    you reviewed with counsel?
5       A.  As I say, the version I looked at
6    was slightly different.  I believe it had
7    a -- other text that was part of it.
8       Q.  Can you look at topics 1C?
9       A.  Okay.
10      Q.  And 1G.
11      A.  Okay.
12      Q.  And topic 2.
13      A.  Okay.
14      Q.  Now, you have been designated by
15   Eagle to testify on Eagle's behalf
16   concerning Eagle topics number 1C, 1G and
17   2; is that correct?
18         MS. WACKER:  For the record, that
19      is subject to a number of objections
20      and scope that was agreed upon by the
21      parties that is not contained in this
22      document, Exhibit 1.
23   BY MR. GRIBBIN:
24      Q.  You can answer.
25      A.  It is 1C, 1G and 2.

3 (Pages 6 - 9)

CONFIDENTIAL



Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

CONFIDENTIAL



Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

CONFIDENTIAL



Veritext Legal Solutions
215-241-1000 ~ 610-434-8588 ~ 302-571-0510 ~ 202-803-8830

Page 221

1              ROMITO - CONFIDENTIAL
2                C E R T I F I C A T E
3        STATE OF NEW YORK     )
4                              : ss.
5        COUNTY OF NASSAU      )
6

7            I, CATHI IRISH, a Registered
8        Professional Reporter, Certified Realtime
9        Reporter, and Notary Public within and for
10       the State of New York, do hereby certify:
11           That JAMES ROMITO, the witness whose
12       deposition is hereinbefore set forth, was
13       duly sworn by me and that such deposition
14       is a true record of the testimony given by
15       the witness.
16           I further certify that I am not
17       related to any of the parties to this
18       action by blood or marriage, and that I am
19       in no way interested in the outcome of
20       this matter.
21           IN WITNESS WHEREOF, I have hereunto
22       set my hand this 13th day of October,
23       2019.
24

25       _____
         CATHI IRISH, RPR, CRR, CLVS, CCR

# EXHIBIT N

**REDACTED**